For the purposes of the oral argument tape, I'll identify those two cases. The first one is 2009-3216, Miller v. MSPB. The second one is 2009-3269, Alford v. OPM. Those are being submitted on the record. The first case for oral argument is Morgan v. Energy, number 2009-3006. And Mr. Sergevom, is that correct? Am I pronouncing it correctly? Sagervom. Sagervom. Thank you. You've reserved five minutes for your rebuttal time. Yes, Your Honor. First, if I can see what I apologize. I was so worried about having shoes to wear in the cold weather because I'm from Las Vegas that I forgot my good shoes and brought my boots. Anyway, good morning, Your Honors. Thank you so much. This case is a little bit unusual. I'd like to focus on that. It's a whistleblower case, and we're here on appeal for determination that there was a lack of jurisdiction, which is the first wrong that you have to meet in a whistleblower case. And I'm not aware of any other type of law where that kind of a threshold matters, but it sounds like it's kind of like a motion to dismiss where it's basically on the pleadings, essentially, with a little bit added in there. But essentially, to prove jurisdiction, you have to show that you did engage in protected activity and that there's some type of a causal connection between that protected activity and the action involved. But at the initial stage, you do not need to show by preponderance of the evidence, right? Exactly. Like I said, it's really a motion to dismiss virtually in the sense that it's a pleading, although it's a little bit higher because there has to be some type of evidence. But that's our concern here, particularly in this type of a case where my client is an actual whistleblower. It's not a case where you're saying I may be a whistleblower. He actually has been found to be a whistleblower. But he still has to demonstrate some evidence or argument that would suggest that the action taken was in reprisal for that whistleblowing. I understand the lower court to have found this was a protected disclosure, and I don't understand the government to be disputing that. No, I agree. But what I guess I'm saying is that the reason we're here is that this case is unusual in the sense that once you have been found to be a whistleblower, it's our experience that that stigma, for better or worse, applies throughout your career. And so where normally you would engage in the protected activity, something would happen to you shortly thereafter, and you would meet that threshold test, in the case of a whistleblower who's actually been found, that person has that title or that stigma attached to them as their career goes on. Why would it be a stigma? Isn't it provided under the law that if an employee does find some kind of waste or otherwise or mismanagement, there's a right to bring it to the appropriate authorities? That's not a stigma. Well, within an institution it is because you have basically exposed the institution to have engaged in inappropriate conduct. And that when you're still working there and that's kind of a status, you are basically isolated and tagged as somebody who has fought the system, maybe prevailed, but as long as those same institutional forces are there, you're always going to be perceived as someone who is outside the norm. And that's our concern is that where the normal whistleblower, I said, the two things would happen, the protected activity and the adverse action would happen relatively quickly. In this case, we're talking about a 15-year period. So there's virtually no way to prove, at least as far as the— But what is the evidence of reprisal? The evidence of reprisal can't simply be reliance on the fact that he is, in fact, a whistleblower because that would then give him a free pass for the entire rest of his life, right? Because for the whole rest of his life, anytime his employer didn't do something that he wanted them to do, he could claim it was because of his previous whistleblowing. So that standing alone can't possibly be the adequate evidence of reprisal that would be necessary to substantiate jurisdiction of the claim. So what is the evidence of reprisal? Well, unfortunately, that essentially is it for this first stage. And I pose the dilemma to you, and I apologize for that's where we're at. But I guess our point is that when you have the proven whistleblower as opposed to the one who is just trying to show that he's a whistleblower, he or she is a whistleblower, that the jurisdictional question is probably not appropriate. I mean, even after jurisdiction is made, you still have to go back and do the summary judgment phase, which is a preponderance of the evidence. Well, you need to establish, you need to make a non-frivolous allegation that would establish a basis for jurisdiction. So you need to make some non-frivolous allegation to show that the whistleblowing was a contributing factor to the personnel actions. And as I understand it, your argument as reflected, for example, on page 42 of your brief, is that you say the mere existence of a retaliatory motive on the part of the acting official, Mellington, is sufficient to establish the disclosures as a contributing factor in the contested personnel action at issue. And I know you're relying on Murano for that proposition, correct? Right. But my question for you is what evidence shows retaliatory motive on the part of Mellington? Well, and that, again, is where we get back to this other issue, which is essentially he was involved, Mellington was involved not in the initial disclosures, but in the subsequent whistleblower claim. And so he was fully familiar with my client's status and also familiar with my client having alleged that he had come after him, essentially. So we're trying to say that is the motive. But again, we don't, we have... But the motive then for retaliation, it seems to me, wouldn't be because of the whistleblowing. It would be because of the accusations of retaliation that your client made against Mr. Mellingham, different from retaliation based on the whistleblowing. That's true. But it's also, again, it goes bigger to the status. I mean, you have a small institution, 200 people, everybody knows everybody, and so you have Mr. Mormon has basically stayed the same place since he engaged in whistleblowing. I mean, the court, to its credit, gave him something when he was proved to be a whistleblower, but he's never, ever received anything, promotion, anything for 15 years through the regular process. Other people come and go. They go up and down the ladder. People have moved around. But he has basically just been frozen. Now, obviously the agency would say, you know, he's incompetent or he's at this level of competence or whatever, but the reality is that he is the only person that's just kind of stayed in his position throughout this entire process while people keep moving up around him. And so what we're trying to say is when it comes to an actual whistleblower designated, the jurisdictional element we don't believe applies because the timing, because the basic way you prove it is the timing test, and the timing test would not apply when you're talking about 5, 10, 15 years. What about the change in the statute with regard to whistleblowing? Has that impacted at all? Your Honor, to tell you the truth, I don't know because I don't think it's retroactive. No, we're not talking about retroactivity. We're talking about whether or not from that point forward the new statutory language would apply to Mr. Morgan's allegations. I would assume it would, but I don't know how that would have changed this jurisdictional issue. I don't think this jurisdictional issue is still this court's standard. It would not impact the right that you say you would have to a hearing at which time you could prove the claim by proponderance of the evidence. Your Honor, I'm not aware that the statute has changed. That issue has not been raised. I mean, I would love to brief you on that issue if the statute has changed that jurisdiction. I mean, that element at all. But I will just say to you, really, in this situation, I don't believe the jurisdictional question is appropriate given the way you normally prove it, which is the timing test, which just would not apply. In that regard, Mr. Stegel, the HA in this case discussed at length the timing, the 14-year period between the whistleblowing and the personnel actions and made reference to the statute, and made reference to the statute which talks about how one establishes And I would appreciate if she laid out the law as it is very gracefully, and I have no argument with how she laid it out. Well, that's my point, because I saw no argument in your brief, no argument whatsoever about the timing issue. Did you raise any point with regard to this significant period between the whistleblowing and the personnel actions? I believe we have said that because he is an actual whistleblower as opposed to an alleged whistleblower, that the timing test is not as relevant. Well, what difference does that make, that whistleblowing has been established? Because you still need to establish some connection. Right, but in this initial motion to dismiss stage, the way you establish it is the timing. Without the timing, then you need to go to the next stage, which would be summary judgment, where you can show a pattern and explain to the judge how this whistleblower status has impacted his whole career. Well, again, I don't see anything in your brief that even makes this point. But there's one part of your brief that I want to refer you to, and I'm a little concerned about this, and I want you to be very careful in how you answer these questions. Your name is on this brief, I don't see anyone else's name on this brief. I assume that you're responsible for this brief. Yes, sir. Well, if you turn to page 28 of your brief, you see a quote there from Johnson, about five lines down. Made clear that, quote, You see that? Yes. I looked at that in Johnson, because that's not my understanding of what Johnson says. And, in fact, that's a misquote. You cropped from that quote, and there's no ellipsis here. You cropped from the quote the following language. And the adverse action was initiated within a reasonable time of that disclosure. So the timing prong is missing from your argument. How do you account for that? I think because we're focusing on the fact that when you are the whistleblower, as opposed to a surrogate whistleblower, that the timing element does not apply. That doesn't give you the right to misquote precedent. That's a cropped quote where you deleted, without any ellipsis or without any indication to suggest to the court otherwise, you deleted one of the two prongs. And, indeed, it's the prong that the A.J. relied on. Your Honor, I agree. Did you check that quote? Initially, but I did not check it and prepare for the argument, no. Well, I'm disappointed to say the least. But I apologize to the court for misrepresenting it. I agree there should be an ellipsis there at least. Would you like to preserve the rest of your time for rebuttal? If I could, Your Honor. Thank you. Ms. Veneman. Good morning. May it please the court. The MSPB correctly decided there was no jurisdiction here because there were no non-frivolous allegations. There was no evidence whatsoever with respect to the knowledge or the timing standards that this court and the board typically rely upon in deciding whether the board has jurisdiction over a claim of whistleblowing. There was not even any evidence of knowledge by Mr. Mellington, the main actor that Petitioner appears to challenge. The only evidence of that was a 1999 email that Petitioner had sent to Mr. Mellington initiating the fact that Petitioner was a deemed whistleblower because of his 1992 protected disclosures. But on page 7 of the decision by the administrative judge, the administrative judge basically said, other than the appellant taking initiative to inform them, meaning other DOE officials, of his whistleblower case or status, there's no indication his disclosures were a continuing source of discussion with Mellington, Betteridge, and Desanza. So the administrative judge then, and also went off on the timing, there's no precedent that a 14 or 15 year gap in time between the protected disclosures that were in 1992 and the four actions challenged here in 2006 and 2007, no reasonable person, that's the standard, could conclude that the timing element was met. But the administrative judge went even further. Well, I understand it was within a reasonable time. Excuse me? Within a reasonable time period, is that correct? As to when the whistleblowing and the actual action was taken against that particular person? Yes, the administrative judge looked at the fact that the disclosures were in 1990 and 92, and the actions here were 14 or more years later. Would it be possible in a government agency that is very small, there are only 200 people in this office, plus or minus, that the actions that were disclosed 14 years before were remembered institutionally by the individuals who stayed within that particular agency, and eventually they took action at that time? It could be possible. It's possible, although there's no evidence in the record on how large this component is, and in fact in the decision that this court sustained last year involving petitioners non-selection in 1996, a lot of the evidence says, well, did the DOE official taking the actual action actually know, or was there imputed knowledge? Did the bad actor before influence the decision in any way? There has to be some knowledge by the person. There's no precedent that any possible institutional knowledge might suffice, and in fact there's no evidence that any of the five DOE officials named here were even employed by the agency in 1990 or 92. And the only evidence that petitioner put forward with respect to Mellington was the 1999 email. There's no evidence that anybody talked about it, people knew about it. Didn't the AJ make a fact finding regarding Mr. Mellington's knowledge? I mean, didn't he say, for purposes of his jurisdictional inquiry, that he was going to accept the fact that Mr. Mellington had knowledge of the protected disclosure? The administrative judge went on to say, even assuming, let's assume that Mr. Mellington had knowledge, then that's the beauty of the decision. She went further and said that. So she didn't say Mr. Mellington didn't have knowledge. There's no fact finding to suggest he didn't, is there? Well, it's not specific, but on page 7 the administrative judge basically says the only evidence of knowledge was the 1999 email, petitioner's initiative. Right, well, acknowledging that there is evidence of something is not the same thing as finding the opposite of it. Are you suggesting that the AJ found that Mellington did not have knowledge? There's no specific finding to that because she went on, there's no specific finding that he lacked knowledge. That's correct, Your Honor. But then she went on to say that as this court has, to use an analysis that this court has endorsed, okay, let's look and see if there are any other circumstantial factors that might support jurisdiction, such as the strength of the agency, evidence in terms of its actions, and whether there's any motive, and there's where she said that there, yeah, petitioner's arguing that she found that Mellington had motive, and there's no such finding in the administrative judge's decision that Mr. Mellington had any motive, or that anybody else had any motive to retaliate. The other types of evidence, you know, did the agency act towards petitioner in a manner disparate to a non-whistleblower? There's no such evidence of that. She looked for any possible evidence to support jurisdiction, and there was none. There was just mostly petitioner's, he called them his chronologies, they're at the end of the appendix where he kind of gave his own description of what happened over time with no attempt to connect the facts that he supposedly alleged as chronologies with any connection to the actions that were taken or not taken, nothing in terms of causality here. If it was clear that Mr. Mellington had knowledge, if that was a clear fact-finding and undisputed by the government, would this be a different case? No, because the timing element is so strong here. There's no whistleblower case out there where jurisdiction was found given the 14-year gap in time. Suppose Mr. Mellington was the person against whom Mr. Morgan had made the protected disclosure. Suppose that 15 years ago Mr. Morgan said Mr. Mellington was causing all kinds of fraud, waste, and abuse, and that was found to be a protected disclosure, and now, 15 years later, Mr. Mellington finally extracts his revenge against Mr. Morgan. Now, you're not suggesting that in that case, the timing alone, the fact that Mellington was willing to wait and bide his time would deprive the court of jurisdiction under those circumstances? It might if there were no other evidence or no evidence at all about Mr. Mellington. But the motive would be overwhelming in that case, the suggested motive, right? Excuse me. Wouldn't it? Not necessarily. Fifteen years in time, people get over a lot of things. Well, some people carry brudges. Some people do. Some people never forget. Some people do, some people don't. But the purpose of requiring non-frivolous allegations is that the burden is on petitioner to establish jurisdiction. The petitioner, the person claiming whistleblower, has to come up with some kind of evidence, an affidavit or e-mails or documents or something. And with respect to the four actions here, and Mellington was only involved with respect to the petitioner's claim, the first two, the non-selections. We're only talking about jurisdiction. We're not talking about even surviving summary judgment. We're not talking about successful establishment of the claim, just jurisdiction. You wouldn't think that if Mr. Mellington had been the subject of the protected disclosures, that you think the timing alone that a 14-year delay ought to, as a matter of law, preclude jurisdiction? Yes, unless there were some kind of evidence that Mr. Mellington was motivated 15 years later to take some kind of action. You can't really presume a bad motive. There has to be some evidence. Maybe there was a statement made to petitioner or somebody else in the agency or a note he passed to somebody or something. But there's nothing here with respect to the first non-selection where Mr. Mellington was involved in the selection. The administrative judge noted that petitioner, in looking at other possible circumstantial evidence, that petitioner didn't claim he was better qualified, and to the extent he tried to rely on the 1997 settlement agreement that settled his earlier case, the remedy would be a petition for enforcement, not another claim of reprisal. With respect to the second non-selection, Mellington didn't even get petitioner's application because petitioner does not dispute that he didn't meet the requirements related to preparation of budgets. With respect to his AWOL charge, basically petitioner is claiming that he was entitled to be at home, and even if he didn't perform any work, he should be paid. But there's no basis for that, and the FlexiPlace agreement itself starts out by saying, this is so the employee will work at home. On what basis and what specific regulation or statutory requirement was the AWOL charge made? There were a lot of documents in the appendix, starting around page 250, where when a federal employee is out of the office, the employee has to submit a request for leave on an OPM form. Is there a presumption that he's AWOL if he doesn't file that form? Well, in this case, the agency gave petitioner time to file the form. I think sometimes a form can be filed after the fact, depending on the circumstances. There's discretion there. But basically, petitioner and the agency entered into this FlexiPlace agreement, so he could work at home while he was recovering. The agency relied upon its own handbooks and OPM rules and regulations that govern a federal employee working at home and still being paid. Is there any specific regulation that you can point to that says specifically, that states that if the employee does not file a leave request or a leave statement after the leave has been taken, that he is AWOL? Your Honor, we have cited 5 CFR 630.1207 in our brief at page 39, and that's one of the regulations that provides the requirements on employees if they're going to be out of the office, particularly on a medical leave, that they have to provide medical documentation and things like that. But as I understand that particular regulation, it doesn't specify that if you don't follow a particular format, then you would be considered AWOL. Well, in the appendix, the DOE official administering the FlexiPlace agreement informed petitioner several times that she was required to certify on the form the hours worked in order that he could be paid. So there are a variety of signing requirements that federal officials are required to follow in order for someone to be paid. And what happened here is he was charged with AWOL, but then he submitted the leave, and he was paid. So he wasn't really deprived of any pay, ultimately because he had annual and sick leave. No, I understand that. But what I'm trying to figure out specifically is there's a regulation that states clearly and specifically that if you are absent from work, then it's assumed that you're AWOL unless you submit the proper form. I apologize, Your Honor, I can't cite any particular regulation right now on that point. We couldn't find one. I'm beginning to wonder whether such a regulation does exist, except for the other regulations that state specifically that you must file certain forms. But there's nothing stating AWOL requirements. Well, I do know there are many decisions from this Court involving AWOL charges, and it's kind of common sense in a way that if you don't show up for work either before or a certain period after, usually within a pay period, you've got to provide either a request for leave or whether it's annual sick or family medical leave or some reason why you are not at work in order to be paid. So that because the person certifying your time has to certify you've actually done the work, which was one of the issues here. But getting back to the jurisdictional point on the fourth claim of constructive demotion, Petitioner also does not dispute that the agency was involved in a reorganization and many employees, including Petitioner, were given revised position descriptions. So I point that out to show that the administrative judge went through a very careful sequential analysis of the information that Petitioner had provided, found that there was no knowledge by, say, people other than Mellington. Even if Mellington had knowledge, the only indication was this 1999 e-mail, and that was seven years before the action taken. The timing is a huge factor. And then she looked at other factors to see, well, is there any other circumstantial evidence that would support jurisdiction? And bottom line, Petitioner had made no connection.  Mr. Berger-Blohm, we have a little bit over two minutes. Just two points. Just to explain the AWOL situation, they approved him to work at home, and then they said, oh, by the way, we don't have enough work for you to do, so you're AWOL because you're not working 80 hours or 40 hours a week. He was at his home, on duty, ready to work. They didn't give him enough work to do, they said, to fill out the 40 hours, so they called him AWOL. No, I understand what the facts are of the case, but I was just looking to see what regulatory foundation there is within the particular agency or OPM to establish an AWOL charge. To me, it was outrageous that you're telling somebody, okay, we're going to authorize you to work at home, and then saying, oh, because we don't have enough work to give you at home, we're going to declare you AWOL. And, again, Your Honor, I totally apologize. I have not seen that. It was a mistake. It's unacceptable. As the President said, the buck stops here. I would say that the next time you file a paper, either in this court or any other court, you need to be a little more careful. Absolutely. Thank you very much, Travis. Thank you. The case is submitted.